## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JOHN B.,[1]

                                             Plaintiff,

        v.                                                      1:20-CV-1310
                                                                (ATB)

KILOLO KIJAKAZI,

                                             Defendant.

JOSEPH M. CONNORS, ESQ., for Plaintiff
CHRISTOPHER L. POTTER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

### MEMORANDUM-DECISION AND ORDER

        This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and

the consent of the parties. (Dkt. Nos. 4, 5).

## I.   PROCEDURAL HISTORY

        On March 22, 2018, plaintiff protectively filed concurrent applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"),

alleging that he became disabled on October 10, 2012.  (Administrative Transcript

("T") 154, 276–81).  Plaintiff's applications were denied initially on July 27, 2018. (T.

151, 152, 175–82).  Plaintiff requested a hearing, which was held on September 30,

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

2019 before Administrative Law Judge ("ALJ") Andrew J. Soltes, Jr.  (T. 48–120).  At the hearing, plaintiff's representatives amended the alleged disability onset date to May 1, 2017.  (T. 57, 299).  Plaintiff and Vocational Expert ("VE") Marian Marracco also testified at the hearing.  (T. 48–120).  ALJ Soltes issued a partially unfavorable decision on November 27, 2019 (T. 13–41), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 20, 2020 (T. 1–6).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

2

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If [she] is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits [her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider [her] disabled without considering
> vocational factors such as age, education, and work experience …
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, [she] has the
> residual functional capacity to perform [her] past work. Finally, if the
> claimant is unable to perform [her] past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record. *Id.* However, this standard is a very deferential standard of

review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.    FACTS

Plaintiff was 55 years old as of the date of the administrative hearing.  (T. 64). He was single and lived in an apartment by himself, however he did have a fifteen-year-old son.  (T. 64–65).  Although he had his driver's permit at one point, plaintiff never obtained his driver's license.  (T. 66).  He relied on his son's mother, his friend, and/or a medicab service for transportation.  (*Id.*). He had his GED.  (T. 68).

Plaintiff was most recently employed as a maintenance worker at the Travelodge

Inns and Suites in 2012.  (T. 65).  His duties there included painting, cleaning, taking out the garbage, and performing some minor repairs and upkeep.  (T. 68–69).  In this position, he rarely lifted more than a gallon of paint.  (T. 69).  Plaintiff stopped working in 2012 because he had a "nervous breakdown."  (T. 70).

Since then, plaintiff had not been employed due to his various medical conditions.  He experienced pain in his shoulders and had trouble lifting his arms above his head.  (T. 71).  Plaintiff was also diagnosed with chronic obstructive pulmonary disease ("COPD"), human immunodeficiency virus ("HIV"), anxiety, and depression.  (T. 71–72).  A year prior to the hearing, plaintiff stopped taking his medications for a period of time because he "didn't want to live anymore."  (T. 72).  Plaintiff had since been compliant with his medication and treatment, however he suffered from side effects including headaches and diarrhea.  (T. 85).  He testified that he had "accidents" a few times a week.  (*Id.*).

Plaintiff testified that he doesn't "really lift anything," but agreed that he could lift a gallon of milk at home.  (T. 74–75).  His son helped him carry bags while shopping.  (T. 75).  At times his anxiety prevented him from going through the check-out line at the grocery store.  (T. 86).  He did not like to be around other people, and was afraid of others discovering his HIV status.  (*Id.*).  His anxiety prevented him from sitting for too long, and he became tired after standing for an hour.  (T. 75–76).  He could walk a "couple of blocks."  (T. 76).  Plaintiff's son's mother came over approximately twice a week to help him maintain his apartment.  (T. 78).  Pushing the vacuum caused him shoulder pain.  (T. 89).  An advocate through a local service

agency assisted plaintiff by managing his medical appointments and providing other assistance; plaintiff also ate lunch at the agency several times a week. (T. 77–78, 87). Socially, plaintiff kept to himself with the exception of his son's mother and his friend Joe. (T. 82–83). He had trouble focusing and with his memory. (T. 88–89). He was always fatigued. (T. 90).

IV.  **THE ALJ'S DECISION**

At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 1, 2017, the alleged onset date. (T. 16). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease, COPD, HIV, compromised immune system, depression and anxiety. (*Id.*). At step three of the sequential evaluation, the ALJ found that the severity of plaintiff's impairments did not meet or equal the severity of a listed impairment. (T. 16–18).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform

> light work as defined in 20 C.F.R. §404.1567(b) and 416.967(b) except frequent reaching. Occasional stooping and crouching. No kneeling or crawling. No ladders, ropes or scaffolds. No unprotected heights. Avoid the use of heavy machinery, including motor vehicles for work purposes. Limited to exposure to dust, fumes, gases, and other pulmonary irritant levels that would be found in a standard office work environment. Limited to unskilled low stress occupations defined as simple routine tasks; basic work related decisions; rare changes in the workplace setting; occasional interaction with the public and coworkers.

(T. 18).

6

Next, the ALJ determined that plaintiff was unable to perform any past relevant work.  He noted that on January 8, 2019, plaintiff's age category changed to an individual of advanced age.  (T. 36).  After evaluating the VE's testimony, the ALJ found that plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy prior to January 8, 2019.  (T. 36).  However, the ALJ concluded that beginning on January 8, 2019, a finding of "disabled" was warranted "by direct application of Medical-Vocational Rule 202.04."[2] (T. 40).  Thus, the ALJ found that plaintiff was not disabled prior to January 8, 2019, but became disabled on that date and has continued to be disabled through the date of his decision.  (T. 40–41).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1.   The ALJ committed reversible error in failing to address plaintiff's kidney impairment at step two of the sequential evaluation process.  (Plaintiff's Brief ("Pl.'s Br.") at 21) (Dkt. No. 17).

2.   The ALJ failed to properly develop the administrative record and obtain medical expert opinion to determine whether plaintiff's impairments met or equaled the severity of a listed impairment at step three of the sequential evaluation process.  (Pl.'s Br. at 21–22).

3.   The ALJ did not adequately assess the opinions of plaintiff's treating medical and lay sources concerning his functional limitations.  (Pl.'s Br. at 22–23).

4.   The ALJ should have further developed and considered the reliability of

---

[2] *See* Medical Vocational Guideline 202.04, 20 C.F.R. Pt. 404, Subpt. P, App. 2.

the vocational testimony of record.  (Pl's Br. at 23–25).

Defendant argues that the Commissioner's decision is supported by substantial

evidence. (Defendant's Brief ("Def.'s Br.") at 3–15) (Dkt. No. 18).  For the following

reasons, this court finds that the ALJ's step two determination was not supported by

substantial evidence, and remand is therefore warranted.

## VI.   STEP TWO - MEDICALLY DETERMINABLE IMPAIRMENT

### A.   Legal Standards

In order to be found disabled, a claimant must show that he is unable to perform

any substantial gainful activity by reason of a medically determinable physical or

mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 20 C.F.R. §§

404.1505(a), 416.905(a). "Consequently, only impairments that are 'medically

determinable impairments' can be considered in the disability analysis."  *Flower v.*

*Comm'r of Soc. Sec.*, No. 6:16-CV-1084 (GTS), 2018 WL 895579, at *5 (N.D.N.Y.

Feb. 13, 2018).

In order to qualify as a medically determinable impairment, an impairment "must

result from anatomical, physiological, or psychological abnormalities which can be

shown by medically acceptable clinical or laboratory diagnostic techniques.[3]  Therefore,

---

[3]Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests.  20 C.F.R. §§ 404.1502(c), 416.902(c).

a physical or mental impairment must be established by objective medical evidence[4] from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; §§ 404.1529, 416.929; *Woodard v. Berryhill*, No. 3:17-CV-1124, 2018 WL 3536084, at *4 (D. Conn. July 23, 2018) (internal quotation marks, citations and brackets omitted).  Furthermore, the evidence must "show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).  The existence of a medically determinable impairment is not established by a claimant's "statement of symptoms, a diagnosis, or a medical opinion[.]"  *Id*.  A claimant bears the burden of establishing that he or she has a medically determinable impairment.  *Woodard v. Berryhill,* 2018 WL 3536084, at *4.

## B.  <u>Application</u>

Plaintiff argues that the ALJ erred in omitting chronic kidney disease ("CKD") from consideration at step two of the sequential evaluation process. (Pl.'s Br. at 21; Plaintiff's Reply Brief at 3–4, Dkt. No. 21).  In response to this argument, defendant maintains that the ALJ was not obligated to find plaintiff's CKD a severe impairment, because the ALJ found "multiple severe impairments . . . and proceeded to the remaining steps of the agency's five-step disability evaluation."  (Def.'s Br. at 3).  Defendant further argues that plaintiff failed to meet his burden of showing that his CKD "significantly limit[s his] physical or mental ability to do basic work activities."  (*Id.* at 4).

---

[4]Objective medical evidence means signs, laboratory findings, or both.  Signs mean one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1502(f–g), 416.902(f–g).

Defendant's argument is misplaced, because the issue here is not whether the ALJ erred in determining the "severity" of plaintiff's CKD at step two, but whether the ALJ erred in failing to address plaintiff's CKD at all.  An error in determining whether an impairment is severe at step two may be harmless if the ALJ identified other severe impairments, proceeded through the remainder of the sequential evaluation, and specifically considered all severe and non-severe impairments during subsequent steps of the process. *See Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013). However, the ALJ's purported error in this case stems from his failure to even consider, much less identify, plaintiff's CKD as a medically determinable impairment.

"[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable." *Penny Lou S. v. Comm'r of Soc. Sec.*, No. 2:18-CV-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019). "Th[e] distinction [between an ALJ's determination that an impairment is not severe and his determination that an impairment is not medically determinable] is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (where ALJ's finding that plaintiff's condition was not a medically determinable impairment was not supported by substantial evidence, harmless error analysis did not apply and remand was warranted); *see also Lauren A. v. Saul*, No. 8:18-CV-0244 (TWD), 2019 WL 4242248, at *7 (N.D.N.Y. Sept. 6, 2019) (ALJ's failure to find impairment medically determinable was not harmless and warranted

10

remand); *Childs v. Colvin*, No. 1:14-CV-462, 2016 WL 1127801, at *3–4 (W.D.N.Y. Mar. 23, 2016) (ALJ's failure to find claimant's schizoaffective disorder was a medically determinable impairment "constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Showers v. Colvin*, No. 3:13-CV-1147 (GLS/ESH), 2015 WL 1383819, *8 (N.D.N.Y. Mar. 25, 2015) ("Since [the ALJ] found that Showers's claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent steps or when formulating Showers's residual functional capacity."). Where an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the claimant's RFC, remand for further proceedings is appropriate. *See Fontanez v. Colvin*, No. 16-CV-1300, 2017 WL 4334127, at *15 (E.D.N.Y. September 28, 2017) (internal citation omitted) (finding the ALJ's failure to acknowledge or discuss the claimant's neck pain at step two or anywhere in the decision was not harmless error and remand was warranted).

The ALJ's step two analysis in this case was incredibly brief.  As previously noted, the ALJ found that plaintiff's degenerative disc disease, COPD, HIV, compromised immune system, depression and anxiety were all severe medically determinable impairments which significantly limited plaintiff's ability to perform basic work activities.  (T. 16). The ALJ did not provide any explanation for his conclusion,

nor justification for the omission of other medical conditions.[5]  (T. 16).  Plaintiff's CKD was entirely absent from the limited discussion.  (*Id.*).  Furthermore, despite the ALJ's extremely in-depth analysis of plaintiff's medical treatment history, there is no meaningful reference to plaintiff's CKD throughout the lengthy decision.  (*See* T. 16–41, *generally*).

The ALJ's failure to identify CKD as a medically determinable impairment at step two is at odds with plaintiff's well-documented diagnosis for this condition, as reflected throughout the administrative record.  Plaintiff claimed disability based, in part, on CKD in his initial application for benefits.  (T. 154, 162).  His reduced kidney function was referenced by plaintiff's counsel at the administrative hearing.  (T. 56).  Moreover, plaintiff's treatment records are replete with references to his diagnosis of CKD.  It appears that plaintiff was diagnosed in 2010, at which time he was put on dialysis for renal failure.  (T. 463, 741, 926).  Plaintiff began treatment with nephrologist Leslie S. Goldstein, M.D. (T. 581, 922), who confirmed plaintiff's diagnosis of Stage Three CKD. (T. 412–14).  His diagnosis is consistently identified in other treatment records during the alleged period of disability.[6]  It is further referenced by several of the treating sources and consultative examiners of record in their medical opinions.  (T. 976, 982, 2019).  In the various county-level disability forms of record, plaintiff's primary care physician identifies his diagnosis of nephropathy as a permanent condition.  (T. 2046, 2048).  On March 28, 2019, plaintiff sought to transfer

---

[5]For example, plaintiff also alleged disability based on his alleged congestive heart failure and "blood clots."  (T. 154, 162).

[6]*See, e.g.,* T. 719, 728, 737, 741, 807, 1925, 1924.

care from his current nephrologist to AMC Nephrology, relative to his CKD.  (T. 1924).

The evidence cited above is inconsistent with the ALJ's finding that plaintiff's CKD did not rise to the level of a medically determinable impairment.  The ALJ failed to include any explanation for why he did not include CKD at step two, despite the evidence of record.  Accordingly, remand is warranted because the ALJ's error impacted the subsequent steps of the disability determination process.  Once plaintiff's CKD was omitted from the list of plaintiff's medically determinable impairments, the ALJ was not required to consider it in determining plaintiff's RFC.  *See Booker v. Astrue*, No. 1:07-CV-646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) (the absence of any explanation or specific finding regarding the plaintiff's left foot condition was "error significant enough to defeat meaningful review at step two and, consequently, each successive step.").

The court's inability to determine whether plaintiff suffered from additional limitations stemming from his CKD, which should have been considered in formulating his RFC, is compounded by the absence of plaintiff's complete treatment record from Dr. Goldstein.  The administrative record reflects that plaintiff began treating for his CKD with Dr. Goldstein as early as 2010, and sought to transfer his care from Dr. Goldstein's office in 2019.  However, the evidence presently before this court contains only one record from Dr. Goldstein's office–an August 5, 2015 treatment note reflecting plaintiff's "annual visit."  (T. 412).  Clearly, there are additional medical records relative to plaintiff's treatment for CKD that are missing from the record, without which this court will not presume that the ALJ's conclusion at step two was

supported by substantial evidence.  *See Morshed v. Comm'r of Soc. Sec.*, No. 19-CV-725, 2020 WL 5814655, at *6 (W.D.N.Y. Sept. 30, 2020) ("In light of the ALJ's failure to evaluate the medical evidence of [plaintiff's] headaches and migraines, the Court has no basis to evaluate whether the ALJ properly excluded the migraines as a severe physical impairment or sufficiently considered the related limitations in the RFC analysis."); *McGlothin v. Berryhill*, No. 1:17-CV-00776, 2019 WL 1499140, at *4 (W.D.N.Y. Apr. 4, 2019) ("Since the Court cannot 'confidently conclude that the same result would have been reached absent the [step two error,]' the Court cannot say the error was harmless.") (internal citations omitted).

Accordingly, this matter should be remanded in order for the ALJ to examine, *inter alia*, whether plaintiff's CKD is a medically determinable impairment, whether it is severe or non-severe in nature, and the limiting effects it may have on his RFC. The ALJ should further develop the record to ensure that it contains plaintiff's complete, relevant CKD treatment history.  The court does not address the plaintiff's remaining arguments "because, after evaluating the medical and diagnostic evidence and applying the de minimis standard," the ALJ may come to an alternative conclusion at step two, and consequently incorporate his findings into the remaining steps in the evaluation process.  *Burgos v. Berryhill*, No. 3:16-CV-1764, 2018 WL 1182175, at *3 (D. Conn. Mar. 7, 2018).  On remand, the ALJ should consider plaintiff's CKD and the other issues raised by plaintiff in this action which the court did not address, in reconsidering whether plaintiff was disabled **prior to** January 8, 2019.  The court's directions on remand do **not** include reconsideration of whether the plaintiff was disabled **after**

14

January 8, 2019.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case

**REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings

consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated: March 16, 2022

Andrew T. Baxter
U.S. Magistrate Judge